First case is 0730473 United States v. Juvenile Male. Each side has ten minutes. Good morning. Good morning. Thank you, Your Honors. My name is David Ness with the Federal Defenders of Montana, representing the Juvenile Male. First thing starting out, I would like to apprise the Court that there is a, it's not really a related case, but it's another juvenile case out of the same district. I'm representing the other juvenile that raises some of these very same issues, at least insofar as the propriety of placing the juvenile into custody with adults. And that case, the, there's actually two appeals in that case. The opening brief on one of them has been filed. The other opening brief is due this Friday. And I'm sorry, I don't have the appeal numbers, but it's, the Juvenile Male is JDC. How old is the juvenile in this case? The juvenile now is 22, I believe. Okay. And JDC is 21. He turned 21 in March. And where has the juvenile in this case been while all this adjudication has been going on? He has been essentially bounced around here and there. He spent quite a bit of time over in North Dakota. He spent quite a bit of time in the Rio facility. At juvenile facilities? Juvenile facilities, some of the time. For the past year, he's been held in the Cascade County Adult Detention Facility. Was that after he turned 21? That was, yes, after he turned 21. It was, I believe, when he was put in there. And just going back to JDC, one of the appeals in that issue, in that case, deals with placing juveniles in an adult detention facility. And that opening brief has already been filed. And I mention that, I guess, just because in JDC in particular, I went, researched it for hours and hours and hours, and went into legislative history and things of that nature, having to deal with the Federal Juvenile Delinquency Act. And I guess from my perspective, why it is improper to place juveniles, adjudicated or not, in with adults. The person in this case is actually 24, isn't he? I thought he was... Born in 1986. 1986, is he? He might be, Judge. I know he's certainly over 21. Well over. Well over 21, yes. Now, but what about at the time he would have been transferred, had he been transferred originally? He would not have been transferred. If he had been treated as a juvenile originally, how old was he then? This case has been pending now for three or four years. I believe he was under the age of 21. He was 15 years old, almost 16, when the crime was committed. He wasn't charged with that act of juvenile delinquency. The government instead charged him with a burglary, I believe it was. He was placed into juvenile detention, and it was sometime after he was adjudicated on that initial charge that the government filed the information charging him with this second-degree murder. Now, you didn't raise these sort of large issues about the treatment of juveniles, people adjudicated as juveniles in adult prisons, until now. Even though the case has been kicking around for so long. And I don't know what to do with that. I mean, I understand that it was never really clear in this case that that was the case, but you just never raised the issue. Well, it never came up until now. It finally came up, really, when this case was remanded, and the district court determined that it would reopen the record to decide whether or not he would even go to a juvenile facility. But that all assumes that we – I mean, wouldn't it make more sense to say that we ought not to be looking now at what would have been the case, what is available for him now, because it's been such a long delay? We should be looking at what would have been available for him had he been treated as a juvenile to begin with? In other words, the only way this is coming up now is as one factor of several in determining whether he should be treated as a juvenile or as an adult, right? And because of all the delay, he's now not eligible under the BOP's policy for juvenile treatment, but he would have been at the time this all started to begin with. So why are we looking at it as of then instead of as of now? Well, with the court's original findings, fact, conclusions, a lot of the court determined at that point that there was juvenile facilities that could treat his needs. And the case was reversed, and it came back up. And then this court reversed a second time, finding that the court made erroneous findings of fact relating to the juvenile social background. And then the court in its opinion mentioned in passing that the court didn't just sort of took judicial notice of the fact that programs in adult facilities were the same as juvenile facilities. It went back down. The court informed the parties that it was going to reopen the record. On a different issue, not on this issue that you're containing now, i.e., whether or not the programs in adult facilities were the same as in juvenile facilities. And the reason he was looking at that is because he was trying to decide whether to treat him as an adult or treat him as a juvenile. And it had nothing to do with this problem of the fact that even if he was not transferred, he still might not be treated as a juvenile. That was a different issue entirely. And you never challenged that issue or brought it up. It didn't come up, Judge. It didn't come up because the court had made factual findings up until this last remand that juvenile facilities were available. It was only then when the court reopened the record and decided and entered a finding of fact that there are no juvenile facilities available that I then started making this argument about, you know, essentially, but wait a minute, he can't do that. You know, it violates the tenets of the Juvenile Delinquency Act. It raises all these constitutional problems. But what I'm saying is, is that even a relevant point in time? You know, the only reason there's no juvenile facilities available for him now is because he's now over 21 because the whole thing's been delayed for so long. So why are we looking at it as of now for that purpose, for the question of whether he should be transferred or not? And shouldn't we just say that we shouldn't be looking at it as of now? I guess what you're getting at is, did I waive the issue? No, I'm saying the opposite now. I'm saying that the problem looks to me to be a different problem, that because of the delay, the judge assumed that he was going to consider now what was available now for this person in juvenile facilities, which was nothing. But at the time that the transfer motion was made, that wasn't the case. So the question is, why are we looking at it as of now? Right, and I guess that was one of my arguments, is why reopen the record at this point? You know, that issue was before the court. My position was that the government should have made that argument in the past. The government didn't raise that argument. The government's benefited through this delay. And then for the court now to reopen the record to say— Well, it was reopening the record on a different issue, though. Well, let's kind of go back, just to make sure I understand the chronology, because in 2005 is when the government makes the motion that he be transferred to the adult status, correct? Right. The court has a hearing, and the court even determines at that point that there are juvenile facilities available with certain kinds of programs. But the court says, nonetheless, I grant the government's motion. He's going to adult custody. Then we have these two appeals, which really relate to whether or not some of the underlying analysis of the judge might have been flawed, not related to the juvenile facility. But nonetheless, when all is said and done, he still grants the motion, correct? Correct. But the difference being, and all along the final bottom line, is that this individual will be going into an adult status, correct? If the transfer decision is upheld, that is correct. It's never overturned. In other words, it's only remanded because of one of the underlying findings. So all along, he's going along toward an adult facility, and then, of course, in effect, because of the appeals about those issues, he ages out, if you will, of the juvenile system. And so then the question is, what is your statutory or other challenge to that situation, which we're now in? Well, I guess first off, he hasn't, according to the statute, he has not aged out of the Federal Juvenile Delinquency Act because the Federal Juvenile Delinquency Act specifically contemplates treatment up to age 26. And it talks about even in 5037. But he's been determined that he's not going to be tried as a juvenile, correct? By the district court. By the district court. Yes. Correct. And I think my main problem is, is it really goes to the factor of what treatment is available for this juvenile, or broadly speaking, any juvenile who happens to be over the age of 21. But as I read the judge's order, he basically was saying, his bottom line question was whether he could be rehabilitated in some way, and we look at that on an abuse of discretion, and this judge said no. And I don't think that was based on the absence of facilities. It's like we're talking two different issues. One is facilities and one is the nature of this individual. How do those match up? Well, I think they match up because in order to make a determination of whether or not a juvenile can be rehabilitated, the court has to look at those six factors. One of those factors being, are there treatment facilities available? Then what this judge did is, in answering one of those factors, the judge said no. In reality, there isn't except for adult ones, and so therefore it doesn't really matter anyway. He's going to be going to an adult facility. And that is part and partial of his overall decision to transfer, at least in the court's last order. And my problem with proceeding in that way is that primarily is that the court made that decision without even looking at the arguments that I made with respect when I'm saying look at the statute. The statute allows for rehabilitative treatment up to age 26. Judge, if you do this, I mean, this does open up a constitutional can of worms. You know, I also argue we're not even, you know, the Bureau of Prisons here, we're talking about a policy statement. It's not even a regulation, so to speak. If we're also in one of those bootstrap district court opinions, in a way, where he says, well, whether he goes to adult status or whether, in fact, he's kept within the jurisdiction of the Federal Juvenile Delinquency Act, he still is going to be housed in an adult facility. So is there anything legally wrong with that statement? It's legally wrong to put someone who's been adjudicated as a juvenile in an adult prison to house them with adult offenders. That, I think, is illegal under the Federal Juvenile Delinquency Act. So for a court to essentially say, as I interpret it is, is that, well, it may be illegal to put him in there, but I'm not even going to look at the legality of that. I'm just going to take it for granted that's what's going to happen, and I'm going to use that as a factor in favor of transfer. Mr. Ness, if you would, finish your answer on your way over your time. So please finish your answer, Judge McEwen, and then. Okay. So to use that as a factor of transfer, I think, is erroneous. I think it was an abuse of discretion. Thank you, sir. The government, please. Good morning, Your Honor. May it please the Court, I'm Carl Rostead with the U.S. Attorney's Office in Montana. As always, it's a privilege to appear here before the Court in advocacy of the interests of the United States. The issue to the government's viewpoint is relatively narrow, and that is getting back to the abuse of discretion standard. I recognize Mr. Ness disagrees with the outcome of this case, and various members of the Court may disagree with the outcome of the case, although, quite frankly, under these circumstances, there's very few people guilty of murder that are that close to being 18, you know, within a year or a little bit over a year, that would not be transferred by any judge in our district. Within a situation where they have a history that this juvenile has had of extreme violence, as the Court knows, he's been basically incarcerated for a chronic history of crimes since he was about 12 years old. And it's a tragedy. There's no question about it. But he's not a very good candidate for what's available under the Juvenile Delinquency Act, and that's what we argued to the Court, and the Court agreed. The options available to the Court as an adult are great. I mean, he could, if he wanted to, if the defendant is a juvenile who could be incarcerated until the time he's 26, technically the judge could say, well, I'm going to incarcerate him until he's 26, but then I'm going to put him on five years of supervised release. That's not available under the Juvenile Delinquency Act. So there are certain things that are really important that weigh against what Mr. Ness would ask the Court to weigh. And as we explained in our brief, this whole discussion is a matter of weighing factors. He disagrees with the way Judge Haddon weighed the factors apparent here, but there are at this point no disagreements with the facts now found. But as I understand his current complaint, it's that this factor has now been changed from what it was before. As I understand, this is what happened. There was a statement in the first transfer memorandum or opinion, which essentially assumed that he would be treated as a juvenile, because at that point I suppose he would have. And it simply says that the same programs are available, whether he's treated as an adult, i.e. transferred, or as a juvenile, i.e. not transferred. And then the second time it gets to this Court, this Court says, well, I don't know how he knows that, but no one's complaining about it. And then he decides to open the record, as I understand, to prove that, not because anybody's concerned about this issue of whether he can be treated as a juvenile at all at this point. And then we find out that, in fact, he can't be treated as a juvenile. At least the BOP would not treat him as a juvenile. So now there's an entirely new factor that's come into the play that really wasn't there before, which is that no matter whether he's transferred or not transferred, he's going to the same place and doing the same thing. Right? That's correct. So we do have a new factor that was not there before. Leaving aside the evidentiary hearing and assuming it's okay, it's just a new factor. And I have two questions about that factor. And that's not a weighing problem, is what I'm saying. It's a factor problem. And one of them is, is it appropriate, and this is what I asked before, to be looking at what's going on now as a reason why he should or shouldn't be transferred, which has other consequences for him, when the delay has simply been because it wasn't done right the first time? I understand, Your Honor. I don't believe that it's a significant moment because Judge Haddon came to the conclusion at the very first transfer time when the finding would have been correct. Well, he's never made a finding that's incorrect. The march of time has changed the factor. There's just no question. If the court is supposed to find what is available for a juvenile, and when the young man was still a juvenile, the judge made that finding as a juvenile. The second time it comes down, he's told to enter new findings, and he doesn't make a finding that they're available, not the second time. I think the second time there might have been some time because he was only 18 or 19 at that point. But by the third time, the fact has changed. March of time has now made him ineligible to be in the juvenile justice system, incarcerated in the juvenile justice system, where there are available juvenile programs. It's too bad, but, I mean, that's just the way it is. It would have been basically a misleading factor to say there are available juvenile programs because there are none. And this court in the Doe case made that fairly clear. And in the second remand actually said that the issue wasn't raised or waived, and we argued to the court that we should leave it alone, but Judge Haddon felt that because the court had raised it and wanted an answer to the question. It didn't raise this issue. It was a slightly different issue. Pardon me? It was not really this issue that was raised. Well, the issue that was raised, the criticism that the court levied in the last opinion, was that the court made a finding that there were programs available but didn't make any findings, didn't make any record of it, and that disturbed the district court on remand to a sufficient extent.  And we're going to make that finding. And then my other question is, since this is new and was raised for the first time, why isn't it the challenge that's being made to it appropriate and something that should have been dealt with by the district court and that we should deal with, i.e., if the Bureau of Prisons is doing that, it's doing it illegally, so it shouldn't be taken into account. What's wrong with that as an argument? That it's illegal? No, but as an argument. I mean, whether it is or isn't illegal, why shouldn't we be dealing with it? Why shouldn't it be dealt with as an argument against this factor at this point? I'm not certain I know the answer to that question. I mean, I guess it's because when the remands came down, they were relatively narrow, and that's why the government urged Judge Haddon not to reopen this issue, not to even look at it. The only one thing was a factor that needed to be revisited and a proper finding made. What did the juvenile argue before Judge Haddon with respect to the programs? What was the argument that they made? The argument, Your Honor, at least apparent to Judge Haddon, was in a way to make it into a box by saying you can't open the record, but your finding here is flawed because the Ninth Circuit has said that you can't make a judicial notice of it. In other words, I believe what the counsel for the juvenile was trying to do was preserve it as an issue but not allow it to be revisited to be fleshed out. So the argument below was you cannot reopen this issue at all? Right. But also that if you do, that the policy is illegal. That argument was made, no? I don't believe that it was fleshed out in that way, Your Honor. To my recollection, the juvenile, well, to my recollection, Your Honor, it was not made. The argument below was simply you can't reopen on this. Right. Judge Haddon said forget it, I'm going to reopen it anyway. Right. There may have been some cross-examination of the witness as to whether it's legal or not legal, but I find it interesting when in his own brief Mr. Ness cites the section of the Juvenile Delinquency Act that says juveniles cannot be housed with adults to now come and say, but this juvenile as an adult should be housed with other juveniles. I mean, it's non-sequitur. Where is he housed right now? I don't know, Your Honor. I think he's housed in an adult facility, but I'll take Mr. Ness's word for it. As his client, he says he's housed in the Great Falls Detention Center or Cascade County. That's an adult facility? Mm-hmm. It is. Well, this side issue is the one you just mentioned where I think they argue that this policy of putting these individuals in an adult facility somehow is a violation of either the Constitution or the statute. Was that raised in front of Judge Haddon? To my recollection, Your Honor, no. But I would trust the court's record. I just haven't studied that part of the record to say that it was, and maybe Mr. Ness can correct me when he gets back up. The question ultimately then becomes, though, is that really part of a transfer hearing? That sounds to me more like a 2241 type of an issue under habeas corpus that the imprisonment is in error. I don't know how it gets into the relative factors about the availability of programs. And I suppose if Judge Haddon were to say that it is unconstitutional for him to do that, I'm not sure that would be within what he's supposed to do under Handy under those various elements. All we're trying to do is balance a bunch of factors. Like I say, the factors should be of no moment because when it was originally decided, when there were programs available, Judge Haddon made the same determination, that the factor was not sufficient or did not weigh in favor of not transferring the fee. Are you suggesting that if we were to determine that it is not an abuse of discretion, the transfer order, that he would still have 2241 as to the conditions or the nature of the confinement of his age and need of services versus his facility? If the transfer order goes through, then he's probably lost that. Then he's an adult and he probably no longer has the grounds to argue that he should be treated as a juvenile. If the Court has no further questions, thank you. Thank you. Mr. Ness, you really exceeded the time, but if you will keep it to a minute, we'll give you a minute, please. I'll just say one thing. In fact, I did raise the substantive arguments about the illegality of placing someone who's adjudicated juvenile into an adult facility. If you had your way, where would he go? He would be treated as a juvenile. He would be treated as a juvenile. Where would he be sentenced if he's found guilty? He would be sentenced under the Federal Juvenile Delinquency Act. He'd be entitled to rehabilitative treatment under the Federal Juvenile Delinquency Act. Where would he go? I don't know. The Bureau of Prisons says they don't have facilities after they're age 21. And quite honestly, if they do, there will probably be some point when the Bureau of Prisons policy will have to be challenged. If they take… Under your construct, he would be treated as a juvenile. He'd go to Bureau of Prisons. The Bureau of Prisons doesn't have any place for him now. No, but they should. Okay, thank you. Thank you. Thank you, both gentlemen. The case argued is submitted. Thank you.
judges: Silverman, McKeown, Berzon